Norman R. ROWE, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

Appeal No. 86–712.

United States Court of Appeals, Federal Circuit.

Sept. 30, 1986.

3. FED.R.CIV.P. 56(c); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835–36, 221 USPQ 561, 564–65 (Fed.Cir. 1984).

John S. McLellan, Kingsport, Tenn., for petitioner.

Rita S. Arendal, Merit Systems Protection Board, Washington, D.C., argued for respondent. With her on the brief were Llewellyn M. Fischer, Acting General Counsel, Mary L. Jennings, Associate General Counsel for Litigation and Marsha E. Mouyal, Reviewer for Litigation.

Before MARKEY, Chief Judge, SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge.

SKELTON, Senior Circuit Judge.

The decision of the *Merit Systems Protection Board* (Board), Docket No. AT07528510345, 29 M.S.P.R. 226, dismissing the appeal of petitioner Norman R. Rowe because it was untimely filed, is affirmed.

Petitioner Norman R. Rowe was removed from his position as nursing assistant, GS-4, with the Veterans Administration Medical Center, Mountain Home, Tennessee (agency), effective January 25, 1985. The basis for the removal was his failure to submit proper medical documentation as an excuse for absence from his job, which resulted in his being absent from his work without leave for 13 days.

In petitioner's final notice of removal he was informed that he could appeal this action to the Board's Atlanta Regional Office within 20 days of the effective date of the action. In addition, he was provided with a copy of the Board's regulations and Optional Form 283 (5/80). As an alternative, he was notified that he could file a grievance in accordance with Article 13 of the negotiated grievance procedures contained in an agreement between his labor union and the Veterans Administration.

Rowe named Lloyd G. Shell, a labor union attorney, as his representative to handle his appeal of the removal action. Shell filed the appeal with the Board on February 18, 1985, 24 days after the effective date of Rowe's removal, which filing was four days late. Because it was filed four days after the time limit of 20 days for filing a petition for appeal to the Board, 5 C.F.R. § 1201.22(b), the presiding official provided Rowe with an opportunity to show good cause for the Board to waive the time limit pursuant to 5 C.F.R. § 1201.12. In his response, filed by petitioner and his attorney on March 21, 1985, he stated simply that his appeal to the Board was filed under the negotiated grievance procedure requiring that a grievance must be filed within 30 calendar days of an action, and it was not untimely.

Thereafter the presiding official held that although Rowe appeared to be confused between the two avenues of appeal and their different applicable filing deadlines, he must be charged with knowledge of the Board's 20-day time limit since it had been specifically mentioned in his removal notice. She found that the petitioner had not shown good cause for the Board to waive the 20-day time limit for his appeal and dismissed the appeal as untimely.

In his petition to the Board for review, Rowe, represented by a different attorney,

acknowledged that his appeal was filed four days after the expiration of the 20–day time period, but urged that his good faith reliance on his attorney's erroneous advice regarding time limits should establish good cause for the delay. On September 19, 1985, the Board denied Rowe's appeal because it did not meet the criteria for review set forth at 5 C.F.R. § 1201.115. An appeal to this Court followed.

The statement of Rowe's labor union attorney to the presiding official of the Board that "Rowe's appeal to the Board was filed under the negotiated grievance procedure requiring that a grievance must be filed within 30 calendar days of an action," has prompted this court, in the interest of justice, to carefully examine the record to determine what kind of an appeal was actually filed. An additional reason for our efforts in this regard is the gratuitous statement in footnote 5 of the presiding official's opinion which says:

> If appellant indeed intended to grieve his removal pursuant to the negotiated grievance procedure, it may be that his grievance can still be processed. The agency and the union, rather than the Board, would have to make such a determination.

These statements seem to infer that the petitioner filed some sort of an arbitration appeal, because without doing so he could not process his removal appeal pursuant to the negotiated grievance procedure as suggested by the presiding official. These statements made it necessary for us to know what kind of an appeal was filed and the circumstances surrounding its filing.

The record shows the following with respect to the filing of petitioner's appeal. The agency included a blank copy of Optional Form 283 (5/80) in petitioner's notice of removal and recommended that he use it to appeal his case if he desired to do so. As will be shown below, the form could be used either for an arbitration appeal or for an appeal to the Board. Paragraph 6A of the form contained a space for petitioner to indicate the type of appeal he wished to make. This paragraph provided as follows:

6A. *APPEALS ARBITRATION.* FOR A MATTER APPEALABLE TO THE BOARD, ANY APPELLANT MAY ELECT APPEALS ARBITRATION AS AN ALTERNATIVE TO THE FORMAL MSPB APPEALS PROCESS. (A detailed explanation of the arbitration process is attached to this form.) PLEASE CHECK ONE OF THE BOXES BELOW.

[ ]  YES, I ELECT APPEALS ARBITRATION

[VV]  NO, I DO NOT ELECT APPEALS ARBITRATION

It is clear that if petitioner wished an arbitration appeal all he had to do was check the block opposite the words "Yes, I elect appeals arbitration." He failed to check that block. Also, he double checked the block opposite the words "No, I do not elect appeals arbitration." The petitioner signed the form in this condition as his appeal document. His attorney mailed it to the Board four days after the required filing date, as shown by the postmark on the transmittal letter, which was verified by the presiding official in her written opinion.

We conclude from these facts that the petitioner deliberately and specifically elected to appeal to the Board and rejected an arbitration appeal, and that he did in fact appeal to the Board. We conclude further that when petitioner's attorney stated to the presiding official that Rowe's appeal to the Board was filed under the negotiated grievance procedure he evidently meant that the appeal was filed within 30 days of the action as required for an arbitration appeal. His difficulty was that he did not file an arbitration appeal but an appeal to the Board which had to be filed within 20 days of the action of the agency. The petitioner's present attorney frankly admits in his brief that the appeal was filed four days late. We find nothing in the record to explain the meaning of the presid-

ing official's statement that it may be that petitioner can still process his removal through the negotiated grievance procedure. That question is not before us and need not be considered further.

The only question left in the case is whether the petitioner showed good cause or a reasonable excuse for the late filing which required the Board to waive the untimely filing. Petitioner's present attorney argues that Rowe's good faith reliance on the advice of the labor union lawyer whom he had selected as his representative to handle his appeal, and who was confused as to the filing date for the appeal, established good cause for the Board to waive the 20-day time limit. He contends further that the late filing of the appeal was not the fault of the petitioner, but was due to the negligence of his union lawyer. He says that Rowe had a right to rely on what his lawyer did, and that the negligence of his attorney should not be imputed to him. The question we have to decide is whether these facts and these arguments are sufficient to show good cause for the late filing so as to require the Board to waive the untimeliness of the appeal.

■ The petitioner urges us to consider the merits of his case in determining whether he was entitled to a waiver for his late filing. He says that he had worked satisfactorily in his job for 20 years and eleven months, that he is in ill health and is in great need of his salary, as he has no other means of support, that he acted in good faith in appealing his case by naming a representative trained in the law to do whatever was necessary for the appeal, and finally, that the agency's case against him was very weak. He thinks these facts show a reasonable excuse for his late filing. While we sympathize with him, as we realize that his removal from his job during his alleged illness after so many years of satisfactory service is a severe loss to him, we are powerless to consider the merits of his case as he requests. We are not a trial court and can function only on the appel-

late level. Our authority is limited to a review of the Board's decision. The merits of the case were not before the Board and it made no decision whatever about the facts relating to the removal of petitioner from his job. Therefore, we cannot consider the merits of the case on the waiver issue or for any other purpose.

■ The Board has the authority to waive the deadline for filing appeals when good cause is shown for extending the time limit. 5 C.F.R. §§ 1201.12 and 1201.-56(a)(2). Congress has given the Board wide discretion in handling appeals and controlling its docket. We have held that waiver of the time limit for appealing is a matter committed to the Board's discretion and this court will not substitute its own judgment for that of the Board. *Phillips v. United States Postal Service*, 695 F.2d 1389, 1390–91 (Fed.Cir.1982). Our review of Board cases in which timeliness is at issue is limited to whether the Board's decision not to waive the regulatory time limit was arbitrary, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. § 7703(c); *Hopkins v. Merit Systems Protection Board*, 725 F.2d 1368 (Fed.Cir.1984); and *Phillips v. United States Postal Service, supra.* Applying this standard to the instant case, we hold that Rowe has presented no reasonable excuse nor good cause for the late filing of his appeal. It is well settled that a person is bound by the consequences of his representative's conduct, which includes both his acts and omissions. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962); *Massingale v. Merit Systems Protection Board*, 736 F.2d 1521, 1523 (Fed.Cir.1984); and *Whitaker v. Merit Systems Protection Board*, 784 F.2d 1109 (Fed.Cir.1986). Therefore, Rowe cannot escape the consequences of the lateness of his appeal that was filed by his union attorney after the deadline, even though Rowe himself acted in good faith in relying on the advice and actions of his attorney. *See Sheeran v.*

*Merit Systems Protection Board,* 746 F.2d 806 (Fed.Cir.1984); and *Phillips v. United States Postal Service, supra.* After all, as the saying goes, "it was his head that was on the chopping block," and not his attorney's. He had a personal duty to monitor the progress of his appeal at all times and not leave it entirely to his attorney.

We conclude from all of these facts and the applicable law that the action of the Board in denying the waiver for the late filing was proper, and was neither arbitrary, an abuse of discretion or otherwise not in accordance with law. The decision of the Board dismissing the appeal because it was untimely filed is affirmed.

AFFIRMED.